■ In the Matter of CHRISTINE ANTONOPOULOU et al., Appellants, v. ABRAHAM D. BEAME, as Comptroller of the City of New York, et al., Respondents.— Order and judgment (one paper), Supreme Court, New York County entered November 17, 1971, affirmed, without costs and without disbursements. Petitioner-appellant Antonopoulou is engaged by the Board of Higher Education as a lecturer at Queens College. In 1969, she took a mandatory maternity leave of absence. At the time, she filed a grievance and also an action before the State Commission on Human Rights, both of which she withdrew, and on November 7, 1969 received from the president of Queens College the pledge "that the administration will deal fairly with Mrs. Antonopoulou and that after her return to work after her maternity leave, she will be provided with a position commensurate with her background, capabilities and experience." The birth occurred in November, 1969, and in January, 1970, she requested termination of the maternity leave commencing with the Spring Term, 1970. On February 17, 1970, her request for early termination of leave was denied on the ground that her duties had been otherwise apportioned for the Spring Term. She attempted to follow the grievance procedure of the collective bargaining agreement, which procedure has heretofore been considered by us in *Legislative Conference of City Univ. of N. Y.* v. *Board of Higher Educ. of City of N. Y.* (38 A D 2d 478). At step 2 of the grievance procedure filed April 27, 1970, the Vice Chancellor for Administration of the City University on May 12, 1970 rendered a decision in her favor directing that she be assigned to duties as of February 1, 1970 (it was already some three months

later), and that she be paid her appropriate salary from February 1, 1970. The matter never went to step 3 for arbitration. The Comptroller of the City of New York refused to make the payment and withheld the back pay covering the period February 1, 1970 to August 31, 1970 on the ground that no services had been rendered by the petitioner. Petitioner, who was joined in the petition by the president of the United Federation of College Teachers, sought to mandate payment in an article 78 proceeding. Under *Board of Educ. of Union Free School Dist. No. 3, Town of Huntington* v. *Associated Teachers of Huntington* (30 N Y 2d 122), we deal not with a collective bargaining agreement to be followed, but with an attempt to settle a claim of discrimination on the ground of sex by a payment of public funds. If the maternity leave provisions are unfair, then they may be amended, but the satisfaction of individual objections by a gift of public funds is counter to the provisions of section 1 of article VIII of the New York State Constitution. Concur — Kupferman, Steuer and Tilzer, JJ.; Markewich, J. P., dissents in a memorandum and Nunez, J., dissents in part in a memorandum, as follows: Markewich, J. (dissenting). On the reasoning of *Board of Educ. of Union Free School Dist. No. 3, Town of Huntington* v. *Associated Teachers of Huntington* (30 N Y 2d 122), I would reverse and order respondent-respondent comptroller to comply with the direction of the Vice Chancellor of the City University to pay petitioner-appellant Antonopoulou's salary for that portion of the period of maternity leave she had been forced to take against her will. The grievance machinery, recourse to which resulted in the award of lost salary, was established, as the result of collective bargaining between the parties, in their labor contract. There is nothing inherently offensive to law in the subject matter — the forced leave — and it was a proper controversy for grievance procedure. The settlement thereunder is as binding as though set forth in the contract itself, for it was brought about by adherence to and enforcement of the contract's provisions. Though the contract did not specifically mention this particular type of grievance as arbitrable by use of grievance procedure, it is obvious that no scheme aimed at the preservation of peaceful labor relations is capable of providing in precise detail for each and every possible controversy which might arise during the agreement's term. The labor agreement was arrived at, pursuant to law, with one authorized city agency, and another arm of the same city should not be permitted to act in contravention thereof. This being so — and the settlement of the vice chancellor being equivalent to an adjudication — what was adjudicated under the grievance procedure was a claim for damages flowing from improper interference with petitioner's right to perform services and to be compensated therefor. The comptroller characterizes the award of lost pay as an unconstitutional gift for services not rendered (N. Y. Const., art. VIII, § 1), and the majority of the court agrees. It is not. It is an award of damages, pure and simple, measured in the only way possible for a breach of an employment agreement, which, as found in the grievance proceeding, deprived petitioner-appellant Antonopoulou of the right to earn that very amount in salary. This is no more a " gift " than any other award of damages for unlawful deprivation of an opportunity afforded by contract. Nunez, J. (dissenting in part). I concur with Justice Markewich except that instead of compensating petitioner-appellant " for that portion of the period of maternity leave she had been forced to take against her will ", I would direct payment of salary from May 12, 1970. The vice chancellor found that Mrs. Antonopoulou had been lawfully and properly placed on maternity leave. Having so found, he had no power to make a gift of public funds and pay unearned back " salary " for several months. The vice chancellor's stated

reason for the award of back pay was the college president's pledge of November 7, 1969 "that the Administration will deal fairly with Mrs. Antonopoulou." This pledge will have been fulfilled by complying with the vice chancellor's determination reinstating the petitioner as of May 12, 1970, the award date. Petitioner was ready and willing to return to the classroom immediately, but by letter of May 25, 1970 she was told by the acting faculty dean to remain on leave until September 1, 1970. The corporation counsel in his brief concedes that petitioner is entitled to her pay from June 1, 1970. He questions the validity of the award only insofar as it provides for back pay from February 1, 1970. [67 Misc 2d 851.]